108    APPELLATE COURTS OF ILLINOIS.

Sinaiko v. Illinois Smelting & Refining Co., 215 Ill. App. 108.

# Sam Sinaiko et al., trading as Sinaiko Brothers, Appellees, v. Illinois Smelting & Refining Company, Appellant.

## Gen. No. 24,552.

1. CONTRACTS, § 39*—*when telephone conversation constitutes contract.* An offer over the telephone to sell zinc slabs or "spelter" and an answer stating that if the seller could get the spelter at once the purchaser would give the seller 12 cents a pound, followed by the statement that "I will affirm that tonight," constituted a contract, and if written confirmation had been necessary the mailing of a subsequent letter would have made the contract complete.

2. CONTRACTS, § 261*—*when ex parte revocation impossible.* The mailing of a letter accepting an offer constitutes *ipso facto* acceptance, and acceptance concludes the contract, and subsequent revocation, *ex parte*, becomes impossible.

3. APPEAL AND ERROR, § 1506*—*when permitting witness to testify after violating rule for exclusion of witnesses will be harmless.* Error in permitting a witness to testify in rebuttal after violating a rule for the exclusion of witnesses was immaterial where the evidence otherwise supported plaintiffs' case.

Appeal from the County Court of Cook county; the Hon. J. J. COOKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed October 15, 1919.

CUNNINGHAM & OSWALD, for appellant.

LEVINSON & HOFFMAN, for appellees; L. LOEWEN-STEIN, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

Claiming that the defendant bought certain merchandise which it refused to pay for, and that as a result it was sold at a loss, the plaintiffs brought suit for the difference, and certain extra charges, and ob-

*See Illinois Notes Digest Vols. XI to XV and Cumulative Quarterly, same topic and section number.

tained judgment against the defendant in the sum of $814.26. This appeal is taken therefrom.

On December 5, 1916, Sam Sinaiko, at Madison, Wisconsin, called up one Weill, president of the defendant company, and told him that the plaintiffs desired to sell some zinc slabs or "spelter." Weill answered, according to his own testimony, "Well, if you can get the spelter at once, I will give you 12 cents a pound." He further testified that Sinaiko responded: "All right, we are going to ship it." There was some further talk over the telephone, in the course of which Weill said: "I will affirm that tonight." On the same day, December 5, 1916, a letter was sent by the defendant company to the plaintiffs which is as follows:

"In regard to the conversation we had with you this morning, we beg to confirm purchase from you of ten to fifteen tons of slab zinc such as we had from you before at 12 cents ($240 net ton) and skimmings at $45 net ton, both delivered Chicago net cash on receipt of material.

"Kindly let us have prompt shipment via St. Paul or C. & N. W. sending invoice and B/L to this office, and oblige."

On December 6, 1916, the plaintiffs wrote the defendant as follows:

"This is to acknowledge receipt of your check for $489.20. P. S. Our Mr. Sam Sinaiko is out of the city today. Will answer yours in regard to the slab zinc as soon as he returns."

On the 10th or 11th of December, 1916, it having taken 2 or 3 days to get an empty car and several days to load it, the plaintiffs shipped the material to the defendant. They also shipped along with the spelter some zinc skimmings and copper, apparently on the theory that the defendant company might purchase the extra shipment, that is, in addition to the spelter. On December 12, 1916, the defendant received a letter containing the invoice and bill of lading. On Decem-

ber 15, 1916, the defendant wrote the plaintiffs as follows:

"We are in receipt of your papers on the 12th inst., and see that you have included in your shipment 19,842# of zinc slabs. We do not find that we ever purchased this material from you and if you will refer to your letter of the 6th you will find that you are in error in making shipment of the slabs. When this shipment arrives we will unload this material and you can dispose of the slab zinc to whom you please."

And on December 23, 1916, the following letter:

"On the 5th we wrote you about this dross and on the 6th your clerk acknowledged receipt of our check for $489.00 and he says, 'our Mr. Sinaiko is out of the city today. Will answer you in regard to the zinc as soon as he returns.'

"On the 11th of the month without further notice we received your bill of lading. We could have sold that slab zinc dross but now with spelter at nine cents a lb. there is no chance of doing anything.

"With your permission we will take same out of the car and keep same for you without charge. We are unloading the skimmings today and if this is not satisfactory you can telegraph us and we will leave same in the car or we will accept same at eight cents a lb."

Subsequently, on February 2, 1917, the plaintiffs wrote to the defendant that the spelter, which, meanwhile, the defendant had returned to Chicago, would be sold at public auction. Accordingly on February 8, 1917, at 3:00 p. m. it was sold for $1,635.89. The charges for freight were $34.67 and for demurrage $36, making in all $1,706.56. The loss was the difference between 12 cents and 8¼ cents a pound on 19,829 pounds, together with the loss of demurrage and freight, making in all $814.26, which was the amount of the judgment entered.

It is the theory of the defendant that the telephone conversation did not constitute a contract and that the plaintiffs' letter of December 6, 1916, was a rejection

of the alleged offer in the defendant's letter of December 5, 1916. We are unable to agree with those contentions. The defendant's letter of December 5, 1916, which contains the words: "In regard to the conversation we had with you this morning, we beg to confirm purchase from you of," etc., constitutes an express admission by the defendant that a contract of purchase and sale had already been made by telephone. When, over the telephone, Sinaiko said: "I want to sell my spelter now," and Weill, knowing, as he did at that time, that the plaintiffs had the spelter on hand, said: "Well, if you can get the spelter at once, I will give you 12 cents a pound," to which Sinaiko responded: "All right, we are going to ship it," there was then a completed contract of purchase and sale. The evidence that Weill said: "I will affirm that tonight," and then wrote on the same day: "In regard to the conversation we had with you this morning, we beg to confirm purchase from you," etc., conclusively demonstrates that the minds of both parties had already met and that the contract was made. The fact that subsequent to the time of the telephone conversation, under date of December 6, 1916, the plaintiffs wrote to the defendant, acknowledging receipt of a check for certain other merchandise, and added a postscript: "Our Mr. Sam Sinaiko is out of the city today. Will answer yours in regard to the slab zinc as soon as he returns," cannot be considered as legally affecting the contract which was already made. There is some testimony on behalf of the plaintiffs that at the time the letter containing the postscript was written, the letter of the defendant of December 5 had not been received. That, however, we consider entirely immaterial. We see no escape from the conclusion that the contract was made over the telephone. But, even if written confirmation were necessary, the mailing of the letter of December 5 made the contract complete. The mailing of a letter of acceptance con-

stitutes, *ipso facto*, acceptance (*Haas v. Myers*, 111 Ill. 421; *Chytraus v. Smith*, 141 Ill. 231), and ''acceptance concludes the contract''; and, subsequently, revocation, *ex parte*, becomes impossible.    Anson, Law of Contract (2nd Am. Ed.) p. 37.

The contention that it was error to permit the witness Felscher to testify in rebuttal, after a rule had been entered excluding the witnesses, is not tenable, as the testimony which she gave, in the view we take of the evidence, was immaterial.

Likewise, the contention in regard to certain instructions we consider as untenable, being of the opinion that the trial judge would have been justified, at the close of all the evidence, in directing the jury to bring in a verdict for the plaintiffs.

Finding no error in the record the judgment is affirmed.

*Affirmed.*